William J. Maledon, 003670
Dawn L. Dauphine, 010833
William D. Furnish, 028725
OSBORN MALEDON, P.A.
2929 North Central Avenue, Suite 2100
Phoenix, Arizona 85012-2793
(602) 640-9000
wmaledon@omlaw.com
ddauphine@omlaw.com
wfurnish@omlaw.com

Kirk D. Dillman, *pro hac vice* to be filed
Alan P. Block, *pro hac vice* to be filed
Robert J. King, *pro hac vice* to be filed
MCKOOL SMITH, P.C.
300 S. Grand Avenue, Suite 2900
Los Angeles, California 90071
(213) 694-1200
kdillman@mckoolsmithhennigan.com
ablock@mckoolsmithhennigan.com
rking@mckoolsmithhennigan.com

**Attorneys for Plaintiff Traeger Pellet Grills, LLC**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Traeger Pellet Grills LLC, a Delaware limited liability company,<br><br>　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>Dansons US, LLC, an Arizona limited liability company; and George Koster, an individual,<br><br>　　　　　　　　　Defendants. | Civil Action No. _____<br><br>**VERIFIED COMPLAINT FOR TRADEMARK INFRINGEMENT AND RELATED STATE LAW CLAIMS**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff TRAEGER PELLET GRILLS LLC ("Traeger Grills" or "Plaintiff") hereby sues Defendants, DANSONS US, LLC ("Dansons"), an Arizona Limited Liability Company, and George Koster and alleges as follows:

### INTRODUCTION

1. Dansons, a competitor to Traeger Grills in the wood pellet grill industry, has engaged in a pattern of improper conduct and unfair competition, including knowingly and repeatedly utilizing TRAEGER trademarks as well as the images and likenesses of Joe and Brian Traeger, all of which belong to Traeger Grills, to promote its inferior Pit Boss and Louisiana Grills brands.

2. Joe Traeger is credited with inventing the wood pellet barbeque grill in the 1980s. In 2006, he and his family sold the company he founded to Plaintiff. Dansons is well aware that, as part of that sale, Plaintiff purchased the exclusive and perpetual right to all Traeger-related intellectual property in the wood pellet grill industry, including all TRAEGER trademarks as well as Joe and Brian Traeger's names, likenesses and "personal goodwill," *i.e.,* their reputations in the wood pellet grill industry.

3. Traeger Grills has long been the largest manufacturer of premium wood pellet grills in the world. Obtaining the rights to use Joe and Brian Traeger's names, likenesses and reputations was a key part of the 2006 sale, for which plaintiff paid over $9 million to members of the Traeger family. Since the sale, Plaintiff has spent over $100 million building the "Traeger" brand, building the Company's position as an industry leader and cultivating an enthusiastic and extremely loyal customer base.

4. Dansons is a recent entrant in the wood pellet grills market. It sells lower-priced and lower-quality grills under the brand names PIT BOSS and LOUISIANA GRILLS. Not content to compete fairly in the market, Dansons announced in 2018 that it had hired Joe and Brian Traeger "to elevate the Louisiana Grills brand and product portfolio." Dansons failed to disclose that it

-2-

intended to accomplish this by misappropriating the Traeger brand and the intellectual property Traeger Grills purchased from Joe and Brian.

5.     Dansons true intentions became clear in March 2019, with the announcement that it would be introducing in the Fall of 2019 a new series of grills called the FOUNDERS SERIES that would be "brought to you proudly by Joe Traeger, the founder of the original pellet grill . . . ." Since that time, Dansons has continued on a near-daily basis to use the likenesses of Joe and Brian, their reputations and stories in the wood pellet grilling industry, and even the iconic TRAEGER barn, all in order to suggest falsely that Dansons is affiliated with or endorsed by Traeger Grills. As Dansons intended, this has caused actual and significant confusion in the marketplace.

6.     Since hiring Joe and Brian Traeger, Dansons has engaged in a multi-pronged efforts to capitalize on Traeger Grills' popularity and success in the wood pellet grill industry by copying Traeger Grills' trade dress and marketing at nearly every turn, by improperly using Traeger Grills' trade secrets misappropriated by George Koster after leaving Traeger Grills' employment, by placing false and misleading reviews on various websites, and, most recently, by stealing Traeger Grills' trademarks, reputation and goodwill, and even using images of the iconic TRAEGER barn that Traeger Grills has sole ownership interest in and has used to market its grills for nearly two decades.

7.     Dansons intentions became clear in March 2019, with the announcement that it would be introducing in the Fall of 2019 a new series of grills called the FOUNDERS SERIES that would be "brought to you proudly by Joe Traeger, the founder of the original pellet grill . . . ." Since that time, Dansons has continued on a near-daily basis to use the likenesses of Joe and Brian, their reputations and stories in the wood pellet grilling industry, and even the iconic TRAEGER barn, all in order to suggest falsely that Dansons is affiliated with or

endorsed by Traeger Grills. As Dansons intended, this has caused actual and significant confusion in the marketplace.

8. To be clear, Joe and Brian Traeger are free to work for Dansons or anyone else. They are not free, however, to do what they agreed not to do – and what they were paid millions of dollars not to do – which is to use and collude with others to use their names, likenesses, and reputations to market competing wood pellet grills. As detailed below, in concert with Joe and Brian, Dansons continues to use their likenesses on a near-daily basis to suggest falsely that lower-priced and lower-quality Danson grills are affiliated with or endorsed by Traeger Grills.

9. As a result and to protect its rights and prevent further confusion in the market, Plaintiff has been forced to bring this action. Traeger Grills seeks to enjoin Dansons from its continuing illegal conduct and to recover the resulting damages Traeger Grills has suffered as well as the attorney's fees it has been forced to incur to secure as a result of Dansons' willful misconduct.

## PARTIES

10. Traeger Grills is a Delaware limited liability corporation with its principal place of business at 1215 E. Wilmington Ave. Suite 200, Salt Lake City, Utah 84106.

11. Dansons is an Arizona limited liability corporation with its principal place of business at 3411 N 5th Avenue, Suite 500, Phoenix, AZ 85013. Dansons currently markets and sells wood pellet grills in the United States under the brand names PIT BOSS and LOUISIANA GRILLS in competition with Traeger Grills' pellet grills. Dansons' founder and CEO is Dan Thiessen. Dan Thiessen's sons are President (Jeff Thiessen) and COO (Jordan Thiessen).

12. George Koster is a resident of Oregon and former Traeger Grills employee. After he left Traeger Grills in 2015, Koster went to work for Dansons.

-4-

**JURISDICTION AND VENUE**

13. The Court has jurisdiction over this action and of the parties under 28 U.S.C. § 1331 based on federal questions jurisdiction and under 28 U.S.C. § 1367 for the related state law claims.

14. This Court has personal jurisdiction over Dansons because Dansons is headquartered in Arizona and is registered as an Arizona Corporation.

15. This Court has personal jurisdiction over George Koster because the act of misappropriation alleged herein involved his transfer of Traeger Grills' trade secrets to Dansons in Arizona.

16. Venue is proper in the District of Arizona under 28 U.S.C. § 1391 because Dansons resides in this District and because a substantial part of the events or omissions giving rise to the claim against Defendant Koster occurred in this District.

**ALLEGATIONS COMMON TO ALL CLAIMS**

**I.    Joe Trager Invents the Wood Pellet Grill**

17. Traeger Grills' inception, history and defining story are rooted in Joe Traeger's invention of the wood pellet grill. As that story goes, in the 1980's Joe invited his family to a Fourth of July cookout at his home in Mount Angel, Oregon. When a grease fire erupted in his gas grill, burning the chicken and threatening his family's safety, Joe kicked the grill off of his porch and headed to the iconic TRAEGER Barn. The result was the invention of the wood pellet grill.

18. Joe manufactured and sold his wood pellet grills through Traeger Industries, Inc. ("TII"), a company owned and operated by him and his family. TII marketed its grills under the TRAEGER trademark. Joe obtained a number of United States utility patents on his inventive wood pellet grills. For many years, TTI was the only manufacturer of wood pellet grills in the United States. TRAEGER soon become synonymous with wood pellet grills and grilling.

19.     From the beginning, Joe and the Traeger family were intimately involved with the identity of the TRAEGER brand.  Traeger marketing materials noted that one of the advantages of the TRAEGER brand was that "Customers feel like they are part of the Traeger extended family."

20.     TII touted Joe's invention of the wood pellet grill, noting "We're the originators of the wood pellet grill, the most versatile cooking appliance you can own." (https://web.archive.org/web/20051231065712/http://www.traegerindustries.com/, a true and correct copy of which, as it appeared on December 31, 2005, is attached hereto as Exhibit 1).

21.     TII's website also recounted the history of the Traeger family and the story of Joe's invention of wood pellet grills.  (See https://web.archive.org/web/20051116202600/http://www.traegerindustries.com/company.htm, a true and correct copy of which, as it appeared on November 16, 2005 is attached hereto as Exhibit 2.

22.     TII first used the name TRAEGER in commerce as a trademark for barbeque grills, grill accessories, and wood pellets for grilling food on January 1, 1986.  On May 22, 2007, Traeger Grills obtained a Federal Trademark Registration for the trademark TRAEGER as used in connection with the sale of barbeque grills, grill accessories, and wood pellets for grilling food, Registration No. 3,244,718, a true and correct copy of which is attached hereto as Exhibit 3.  As demonstrated below, the TRAEGER trademark has been in consecutive, extensive, and widespread use on these goods for more than a decade following its registration and thus is incontestable.

23.     As shown in the chart attached hereto as Exhibit 4, Traeger Grills currently owns 10 active Federal trademark registrations for various goods and services related to its sales of wood pellet grills that use the TRAEGER mark by

itself or together with artwork or other related terms, and images of the

TRAEGER Barn have become synonymous with Traeger Grills.

24.    TII and Traeger Grills also have used images of the TRAEGER Barn in advertising and marketing their pellet grills continuously since at least 2005.

25.    Traeger Grills' Product Catalogs use the following image of the TRAEGER Barn to promote its history as the originator of the wood pellet grill:



26.    Traeger Grills and its distributors have displayed artwork images and photos of the TRAEGER Barn, on websites and at point-of-sale, brick-and-mortar locations where customers can purchase Traeger Grills' products and apparel, including TRAEGER Barn-themed tee shirts and hats.  Brick-and-mortar dealers who sell Traeger Grill products also display signs of the TRAEGER Barn provided by Traeger Grills, as shown below:

-7-

4827-5467-8938



## II. The Traeger Family Sells TII's Pellet Grill Business and All Associated Intellectual Property to Traeger Grills

27. On February 21, 2006, Traeger Grills, a limited liability company then registered and headquartered in Tampa, Florida, purchased all of TII's assets, including all associated intellectual property. The sale transaction involved three interrelated agreements, the Asset Purchase Agreement, the Intellectual Property Rights Assignment Agreement, and separate Employment Agreements with Joe, Brian, and Randy Traeger.

### A. The Asset Purchase Agreement

28. On February 21, 2006, TII, the Joe Traeger Charitable Trust, the Randy Traeger Charitable Trust, the Mark Traeger Charitable Trust, Brian Traeger, Joe Traeger, Randy Traeger, and Mark Traeger entered into an asset purchase agreement with Traeger ("Asset Purchase Agreement"). A true and correct copy of the Asset Purchase Agreement is attached as Exhibit 5.

29. Pursuant to Article 1.1 of the Asset Purchase Agreement, Traeger Grills purchased all of TII's "right, title and interest in and to the Business, including, without limitation, in and to all of the assets, properties, rights, goodwill, contracts and claims of the Business, wherever located, whether tangible

or intangible, real or personal, known or unknown, actual or contingent, as the same shall exist as of the Closing," other than certain "Excluded Assets" not relevant here.

30.     Traeger Grills further purchased all "Intellectual Property Rights," defined to include "all items listed on Exhibit A to the [Intellectual Property Rights Assignment Agreement] . . . , trademarks, . . . , likenesses or other intellectual property held by the Sellers or any of their Affiliates and used or useful, directly or indirectly, in the Business and any other matters within the scope of business of the Company whether or not reduced to writing." (Article 8.)

31.     Sellers agreed to "sell, assign, convey and deliver . . . all the Sellers' interest in the Intellectual Property Rights" (Article 1.1(e)) and further represented that "all Intellectual Property Rights held by any of the Seller Parties relating to the Business are valid and subsisting and provide the Seller with the right to exclude all others from the use thereof, [except for certain licenses not relevant here]" (Article 2.19).

32.     On page 1 of the Asset Purchase Agreement, in the first Recital, TII's Business was broadly defined as "the business of design, assembly, warehousing, manufacture, marketing, sale and distribution of wood pellet grills and smokers, wood pellet BBQs, camp stoves, other cooking devices using wood pellets, and flavored and/or BBQ wood pellets and related products and accessories for the foregoing."

33.     The assets Traeger Grills purchased included, among other things: all accounts receivable (Article 1.1(a)), all inventory (Article 1.1(b)), all equipment and machinery (Article 1.1(c)), all tools (Article 1.1(d)), and all goodwill associated with the Business (Article 1.1(n)).

34.     Pursuant to Article 1.6(b) of the Asset Purchase Agreement, Traeger Grills paid the Selling Parties $3,402,122.00 as the consideration for these assets.

4827-5467-8938

## B. The Intellectual Property Rights Assignment Agreement

35.     On February 21, 2006, Joe, Brian, Randy, and Mark Traeger entered into an Intellectual Property Rights Assignment Agreement with Traeger Grills ("IP Assignment Agreement").  A true and correct copy of the IP Assignment Agreement is attached as Exhibit 6.

36.     Pursuant to Article 1.1 of the IP Assignment Agreement, Joe, Brian, Randy, and Mark, assigned and transferred to Traeger Grills "all of their right, title and interest in and to the Intellectual Property Rights," including, but not limited to, the items listed on Exhibit A to the Assignment (the "Traeger Intellectual Property").

37.     As set forth in Exhibit A to the IP Assignment Agreement, the assigned Traeger Intellectual Property included, in part, "[a]ll the patents, patent rights, proprietary info and projects, trade secrets, personal goodwill and IP assets and properties used or usable in the business" which included, but was not limited to:  (1) the "Traeger name and tree logo (which Seller is assigning including any rights to register, in connection with the Business only)"; and (2) [a]ny other marks, logos, copyrights or other intellectual property used in connection with the Business, including without limitation likenesses of people and images used in advertising (who shall sign documentation allowing the Buyer to continue to use the likenesses without cost and deliver said documentation to Seller at Closing)."

38.     Traeger Grills paid a total of $9,000,000 for the Traeger Intellectual Property, of which Joe received $2,842,000, Randy $2,747,000, Mark $2,747,000, and Brian $664,000. In addition, Traeger Grills agreed to pay an additional $2,000,000, conditional upon its meeting certain net sales figures for the next two years.  (Article 1.4.)

39.     Joe, Brian, Randy and Mark agreed that "[a]ll of the Intellectual Property Rights are valid and subsisting and will provide the Buyer [Traeger] right to exclude all others from the use thereof."  (Article 2.6(a).)

-10-

40.     Joe, Brian, Randy and Mark also agreed that the IP Assignment Agreement would be binding upon and inure to the benefit of the parties and their respective successors and permitted assigns.  (Article 9.4.)

**III.     Traeger Grills Builds the Traeger Brand and Associated Marks**

41.     Since 2012, Traeger Grills has spent more than $100 million marketing its products nationwide through direct television (DRTV) campaigns, television advertisements, social media marketing, marketing in retail stores, and a travelling "Roadshow" programs that demonstrate Traeger Grills' products in retail stores and at special events.

42.     Traeger Grills' marketing efforts have used the following marks (collectively the "Traeger Marks"):

- Plaintiff has exclusively used the plain text mark TRAEGER since 1987, which was first registered with the USPTO in 2007 as No. 3244718 and subsequently extended to additional goods and services at registration Nos. 4559448, 4569153, and 4082237.

- Traeger has registered IRONWOOD with the USPTO, No. 5628801, and the first commercial use of the IRONWOOD mark occurred in 2017.

- Traeger has been selling a model named TAILGATER model since 2016.

- Traeger has been using PRO SERIES in commerce as a model name since 2016, and has been designating models as "Pro" since 2015.

- Traeger has used the iconic Traeger barn in advertising going back to 2005 and began using its current barn logo and design in 2014.

**A.     Television and Radio Advertisements**

43.     From 2015 through 2018, Traeger Grills engaged in a long-form Direct Response Television ("DRTV") campaign.[1]  The DRTV ads introduced

---

[1] DRTV is otherwise known as an "infomercial."

4827-5467-8938

consumers to the concept of the wood pellet grill, outlined Traeger Grills' features, and showcased testimonials from Traeger Grills users and barbeque masters. These campaigns ran for more than 20,000 hours nationwide. Each advertisement contained extensive images of the TRAEGER mark.

44.     Since late 2016, Traeger has also been a featured sponsor on the Dan Patrick Show, an Emmy nominated daily sports radio show, podcast and television show. The Dan Patrick show is nationally syndicated and is also available as a podcast and as a web-based television show. In addition to its regular sponsorship of the show, Traeger grills were featured on Dan Patrick's show in connection with his coverage of Super-Bowl LI in February 2017.

45.     Traeger Grills also has invested significant resources in television advertising, airing a national commercial that favorably compares its products to gas grills. These ads feature the TRAEGER mark.

**B.     Roadshows**

46.     Traeger Grills has marketed its products through a robust program of travelling "Roadshows" since 2010. Traeger Grills has been conducting Roadshows at Costco stores and other venues such as fairs and rodeos since 2010 and has been conducting Roadshows in Home Depot stores since 2015. Since 2010, Traeger Grills also has been conducting Roadshows nationwide at other outdoor events such as rodeos and fairs.

47.     At a Traeger Grills Roadshow, Traeger Ambassadors set up a booth with Traeger products and accessories. The Roadshow booths have historically had a banner bearing the TRAEGER name, as well as other marketing materials with the TRAEGER name and model names, including PRO SERIES, TAILGATER, and IRONWOOD.

48.     From 2012 through 2017, Traeger Grills employed over 100 "Ambassadors" to represent the Traeger brand at more than 1000 Roadshows annually. In January 2018, Traeger Grills increased its Roadshow presence, hiring

more than 100 additional Ambassadors and conducting more than 2,500 Roadshows every year at Costco, Home Depot, and at outdoor events.

49.     The Roadshows are effective at driving consumer interest in wood pellet grills and Traeger Grills in particular.  From 2013 through 2018, when Traeger Grills were sold in Costco's regular stock, sales of grills would increase by two to three times in the weeks following a Roadshow.

### C.     Retail Marketing

50.     Traeger Grills expends significant resources promoting its brand through in-store marketing at its retail partners.  Some of Traeger Grills' strategies include door and window stickers with the TRAEGER mark, banners bearing the TRAEGER mark, signs with the image of the TRAEGER Barn, and signs bearing Traeger Grills' other marks, including IRONWOOD, TAILGATER, and PRO SERIES.

### D.     Social Media Marketing and Digital Marketing

51.     Traeger Grills also actively markets itself on social media through its official channels, through its active social media community, and through its relationships with influencers.

52.     As of December 2018, Traeger Grills had more than 1.35 million followers across its combined social media accounts on Instagram, Facebook, Twitter, Pinterest, and YouTube.  In 2017, Traeger Grills's official social media accounts made more than 97 million impressions and more than 175 million impressions in 2018.

53.     Traeger Grills has been posting videos to YouTube since 2009 and has posted more than 400 videos, including recipe guides, how-to videos, promotional videos, and product announcements.  Each of these videos features the TRAEGER name throughout.  Collectively, Traeger Grills' official YouTube videos have been watched nearly 19 million times.  Additionally, Traeger Grills

users have posted numerous videos about their Traeger Grills products to YouTube.

54. Both Traeger Grills' posts and community posts feature the TRAEGER name, and a number feature the TRAEGER Barn, as well as Traeger Grills model names such as the PRO SERIES, IRONWOOD, and TAILGATER.

55. Since joining Instagram in 2014, Traeger Grills has made more than 2,000 posts to its official Instagram accounts. It has a thriving Instagram community of user-generated content, as identified by the use of Traeger Grills-related hashtags:

- The hashtag "#traegergrills" is associated with more than 256,000 posts;

- The hashtag "#traeger" is associated with more than 266,000 posts;

- The hashtag "#traegernation" is associated with more than 120,000 posts;

- The hashtag "#traegerbbq" is associated with more than 41,000 posts;

- The hashtag "#traegeroutdoors" is associated with more than 19,000 posts;

- The hashtag "#traegerculinary" is associated with more than 16,000 posts;

- Various other hashtags, such as "#traegersmoker" and "#traegerfamily," "#teamtraeger," and "#Traegerday" are associated with more than 10,000 posts each.

56. Traeger Grills joined Facebook in 2009 and has posted more than 3,000 times on its official Facebook page. Community members actively comment, like, and share these posts. Additionally, Traeger Grills users have established active groups to discuss Traeger Grills' products and "Traegering."

-14-

57.     Traeger Grills also has used each of the TRAEGER marks on its website.  In 2015, Traeger Grills had roughly 5 million unique users visit its website, which has steadily grown to more and 11.5 million unique users in 2018.  In 2018, more than 17 million visitors to Traeger Grills' website came from a search engine.

58.     Customers and potential customers can also subscribe to Traeger Grills' mailing list to receive emails from Traeger each week that contain recipes, product information, invitations to purchase Traeger Grills products, and advice on grilling with Traeger Grills products.

59.     Traeger Grills currently has more than one million subscribers to its mailing list.  Recipients clicked on links to the Traeger Grills website contained in those emails more than 2.5 million times in 2018.  Traeger Grills' email blasts feature the TRAEGER mark as well as the other marks at issue here.

**E.     Nationwide Sales**

60.     Traeger Grills products are sold nationwide at large chain stores such as Home Depot, Ace Hardware, Costco, Dick's Sporting Goods, Academy Sports, Orchard Supply and others, as well as a large number of specialty barbecue stores.  They also are sold online at Amazon.com, through the Traeger Grills website, and through the websites of various Traeger Grills' resellers.

61.     Since 2009, Traeger Grills has sold across the United States more than 2.2 million grills, more than 15.5 million accessories, and more than 30 million bags of pellets.  Each of these items bore the TRAEGER mark.

62.     Based on survey data, from 2018 to the present, Traeger Grills has sold 28% of the wood pellet grills sold in the United States, compared to PIT BOSS' 12% unit share and LOUISIANA GRILLS' 0.5% unit share over the same period.

4827-5467-8938

## F. Media Recognition of the TRAEGER Brand

63. Traeger Grills has received significant attention from major media outlets due to its high-quality, innovative products.

64. On October 15, 2018, Outdoors Online ran an article titled "Just Buy a Traeger Grill Already." The article concluded: "This is more than a grill: it's the best food you'll ever make."

65. On March 15, 2019, Digitaltrends.com, an online magazine with more than 30 million unique monthly users, ran an article titled "Traeger's latest wood-pellet grills are smoky, smart, and spacious."

66. The Digital Trends article noted that "Founder Joe Traeger developed the Traeger wood-pellet grill in 1985 and patented it in 1986," and lauded Traeger Grills' new product features.

67. More recently, on March 16, 2019 the Daily Beast—an online magazine with more that 20 million unique visitors per month—ran a feature in its internet shopping vertical lauding Traeger Grills' new product line for its "focus on smart tech and faster results."

68. On the same day, Anthony Karcz wrote in Forbes of his first effort to cook ribs on Traeger Grills' Ironwood 650 grill: "The first bite was one of those moments that made me forget every failed rib attempt I'd made on other grills and smokers - every stringy rib, every broken and burnt slab that I'd made in the past melted away."

69. Karcz recounted the excitement that the FedEx driver who delivered his grill expressed towards Traeger Grills and concluded: "For a grilling fan like my enthusiastic FedEx driver, delivering a Traeger was like BBQ Christmas, and he got to play Santa."

## G. Consumer Awareness of the TRAEGER Brand

70. Traeger Grills' extensive marketing efforts have resulted in significant consumer awareness of the TRAEGER Brand.

71.     Unaided brand awareness is where consumers can recognize the name of a brand without prompts.  Recent survey data shows that Traeger's unaided awareness is more than ten times greater than Louisiana Grills' and more than five times greater than Pit Boss' unaided awareness.

**IV.     Dansons' Efforts to Confuse Consumers and Appropriate Traeger Grills' Goodwill**

72.     Dansons entered the wood pellet grill market in 2003 with a single grill sold under the LOUISIANA GRILLS brand.  The LOUISIANA GRILLS brand also offered two grills that used both wood pellets and gas.

73.     Louisiana Grills failed to make significant inroads in the wood pellet grill market.  In 2017, and 2018, Louisiana Grills failed meaningfully to register in survey data regarding wood pellet grills purchased in the United States.

**A.     Trade Dress and Model Name Copying**

74.     Beginning in 2014, Dansons embarked on a new and comprehensive strategy to copy Traeger Grills, the company that had become nearly synonymous with wood pellet grills.

75.     In 2014, Dansons launched the Pit Boss brand of wood pellet grills. These grills copied significant aspects of the Traeger Grills look, including a copper painted lid on "deluxe" versions of each model, a square pellet hopper located on the left side of the grill, similar placement and look of grill controls, a bucket hung on the right side of the grill to collect grease, a skinny leg design with large wheels, and, on larger models, a nearly identical smokestack on the right side of the grill.  *See* Exhibit 7 to this Complaint.

76.     In 2016, Traeger Grills released new models of grills, including a "Pro Series" with both bronze and blue painted lids and a "Tailgater" designed for portability with silver, bronze, and blue painted lids.

77.     In 2017, Pit Boss began offering grills with nearly identical shades of blue and bronze lids and in 2018 Pit Boss launched a "Tailgater" model and

-17-

several "Pro Series" models.  Following Traeger Grills' introduction of an "Ironwood" model grill in 2019, Louisiana Grills announced that it planned to introduce an "Iron Horse" grill in 2020.

78.    Pit Boss has also copied Traeger Grills' pellet guide.  Traeger uses the pellet guide to illustrate which type of wood pellets are best for cooking each food type, from types of meat such as pork, steak, and chicken, to vegetables and baking.  Traeger Grills' pellet guide appears on each bag of Traeger Grill wood pellets sold in the United States and is also included in each Traeger Grill sold.

79.    Pit Boss includes a nearly identical pellet guide on its bags of wood pellets.  *See* Exhibit 8 to this Complaint.

**B.    Social Media Copying**

80.    Pit Boss has also copied Traeger Grills' successful social media strategy.

81.    For example, Traeger Grills uses the hashtag #traegernation to refer to, and to organize, its social media community.  Dansons copied this strategy, using the hashtag #pitbossnation.

82.    Pit Boss similarly copied Traeger Grills' concept of #TraegerDay in May, advertising #PITBOSSDAY weeks later.

83.    Pit Boss has also copied specific content and concepts used in Traeger Grills' social media marketing.  For example, on February 11, Traeger Grills posted a picture of "Bacon Roses" to Instagram with a link to a recipe and how-to guide for making bacon roses.  Shortly after this post, Pit Boss' Instagram account posted a picture of "Bacon Roses" with a link to a similar recipe.

84.    When Traeger Grills posted an image of "the ultimate Traeger leftover sandwich" following Thanksgiving, Pit Boss quickly posted its own image of leftover turkey sandwich.

85.    When Traeger Grills began placing customer reviews and testimonials in its social media feed, Pit Boss quickly copied the strategy.

-18-

86.     Dansons frequently copies concepts and the look and feel of Traeger's social media posts shortly after Traeger posts the content.

### C.      Accessory Copying

87.     Pit Boss has also copied a number of accessories designed and sold by Traeger Grills.  Pictures of copied accessories are attached as Exhibit 9.  For example, Pit Boss copied color scheme, materials, and layout of Traeger Grills' cooking apron.  Pit Boss also copied the design, materials, and look of Traeger Grills' magnetic accessory hooks.  Pit boss further copied Traeger Grills' concept for, and design of, a magnetic cutting board that adheres to the top of the pellet hopper and sticks to the lid when it is raised.

### D.      Website and Recipe Copying

88.     Dansons has also consistently copied the look and content of Traeger Grills' website.

89.     Pit Boss' website, like Traeger Grills' website, features its logo in the upper left corner of the landing page, with a row of links at the top of the page for Grills, Accessories, and Recipes.

90.     Pit Boss organizes its recipes in the same categories as Traeger Grills, with categories by holiday, by meal, method of cooking, and type of food.

91.     Even more granularly, the Pit Boss website has copied a significant number of individual recipes created by Traeger Grills.

## V.      Danson Hires Joe and Brian Traeger

92.     In 2018, Joe Traeger reached out to Traeger Grills for a job for himself and Brian.  The terms were unreasonable and unacceptable to Traeger Grills.  Rather than pursue a commercially reasonable arrangement, or seek employment in a legally permissible form (*i.e.,* any job that did not trade on their names, likeness or reputations), Joe and Brian went to work for Dansons and colluded with Dansons to improperly use their names, likenesses and reputation,

including the Traeger name and origin story that they had previously sold and assigned to Traeger Grills.

93.     On or about September 20, 2018, Dansons issued a marketing release, a true and correct copy of which as it was downloaded from https://dansons.com/media-room?product_id=692 is attached as Exhibit 10.  The release announced, among other things, that "the original founder of the pellet grill, Joe Traeger, has joined the Thiessen family at Dansons to elevate the Louisiana Grills brand and product portfolio."  The release further noted that "the first pellet grill was born in 1983 in the signature Traeger barn, which still sits as a landmark in Mount Angel, Oregon."  It continued:  "In this partnership, Traeger will be developing new pellet grilling products alongside Pit Boss founder and pellet grill innovator, Dan Thiessen."  This was false.

94.     Not only was the marketing release false and misleading, as Traeger Grills is not working with Dansons and is not developing new products with it, it is also a theft of Traeger Grills' intellectual property.  Traeger Grills owns the TRAEGER trademark and name, along with all personal goodwill of Joe and Brian Traeger who, therefore can only permit their names, likenesses and reputations to be used in the wood pellet grill industry in affiliation with Traeger Grills.  Traeger Grillshas not authorized Dansons (or Joe or Brian) to use Joe's name or personal goodwill or the TRAEGER trademark in any manner, especially not to bolster a competitor in the wood pellet grills industry.

95.     Dansons' September 20, 2018 marketing release featured three photos, all of which included Joe Traeger.  Two of the photos included Joe, Brian, Dan Thiessen, Jeff Thiessen, and Jordan Thiessen standing together in front of the TRAEGER barn with the TRAEGER name prominently displayed behind them. True and correct copies of these photos are reproduced below:

-20-





(Photos from Dansons' September 20, 2018 Marketing Release showing, from left to right, Jordan Thiessen, Jeff Thiessen, Dan Theissen, Joseph Traeger, and Brian Traeger; Exhibit 10 at 1, 2).

96.     The clear intent of these images, together with the misleading statements in the marketing release, was to confuse consumers by suggesting that Plaintiff Traeger Grills was in some way working in concert with Dansons to develop and market pellet grills.

4827-5467-8938

97.     On September 21, 2018, Traeger Grills' counsel sent a letter to Dansons demanding that Dansons cease and desist any and all use of, and abandon any future plans to use, the TRAEGER mark.

98.     For a period, Traeger Grills' letter appeared to have its desired effect.  But it was only the quiet before the storm.

**VI.     Dansons Colludes with Joe and Brian to Usurp Traeger Grills' Exclusive Right to the Traeger Intellectual Property and Brand**

99.     On or about March 14, 2019, nearly six months after Traeger Grills' cease-and-desist letter, Dansons issued a marketing release announcing that it would be selling a new series of wood pellet grills under the LOUISIANA GRILLS brand called the FOUNDERS SERIES.  A true and correct copy of Dansons' March 14, 2019 marketing release as it was downloaded from https://dansons.com/media-room/press-release-founders-series is attached as Exhibit 11.

100.     The March 14, 2019 release announced: "The Founder Series is brought to you proudly by Joe Traeger, the founder of the original pellet grill, and Dan Thiessen, an accomplished innovator in the pellet grill industry." (Exhibit 11 at 1). In the release, Dansons made clear its intention to continue using Joe in the marketing of its products, including the FOUNDERS SERIES, and other future products: "'We've just scratched the surface of this partnership and its capabilities – and neither of us is going anywhere,' said Dan Thiessen."

101.     Starting on March 16, 2019 and continuing to the present, Dansons posted on Instagram, Facebook, and Twitter a series of photos and marketing statements touting Joe and Brian Traeger's relationship with Dansons and its brands Louisiana Grills and Pit Boss.  These posts include: posts using Joe and Brian's names and likenesses, posts containing images of and references to the TRAEGER Barn, posts with references to the "founder" of the pellet grill and the "original" pellet grill, posts linking Joe Traeger and the Traeger name to the

FOUNDERS SERIES and posts linking Joe Traeger and the Traeger name to Dansons.

102.    For example, on March 17, 2019, Dansons posted to the LOUISIANA GRILLS Instagram feed a post featuring a photograph of Joe and Dan Thiessen.  In this post, Dansons confusingly identified Joe and Dan Thiessen as "the Founders" even though Joe did not found Dansons and Thiessen did not found the wood pellet grill.  A true and correct copy of a screenshot of Dansons' March 17, 2019 Instagram post, as visible on the mobile version of Instagram, is reproduced below:



103.    Additional Dansons' posts of images of Joe and/or Brian Traeger on the LOUISIANA GRILLS' and PIT BOSS' Instagram feeds, Facebook pages, and Twitter feeds, and PIT BOSS' Facebook pages are reproduced on pages 1-2, 4-5, 7-9, 11-13, 15-19, 21, 23-28, 30-32, 34-36, 38-43, and 45-46, 48-52, 54-61, 63-64 of Exhibit 12 to this Complaint.

4827-5467-8938

104.    On April 2, 2019, Dansons posted on the official LOUISIANA GRILLS Instagram site a photograph of Joe standing in front of the TRAEGER Barn with the caption: "'The barn is like home.' Joe Traeger.".  The image shows the Traeger name next to the LOUISANA GRILLS brand and misleadingly states that "the founder of the wood pellet grill, Joe Traeger, is still adding to this legacy today, in the place where it all started #TheTraegerBarn . . . ."  A true and correct copy of a screenshot of Dansons' April 2, 2019 Instagram post, as visible on the mobile version of Instagram, is reproduced below:



105.    Similarly, on May 13, 2019, Dansons posted on the official LOUISIANA GRILLS Instagram site a photograph of a hand-made drawing of the original TRAEGER barn with the TRAEGER name prominently displayed and the words "Established 1983, Mount Angel, Oregon."  Dansons further posted the

-24-

following text: "'Authentic - adj. of undisputed origin, genuine.' There is no doubt that Joe Traeger is the father of pellet grills, and it all began in the Traeger Barn . . .." A true and correct copy of a screenshot of Dansons' May 13, 2019 Instagram post, as visible on the mobile version of Instagram, is reproduced below:



106. Additional Dansons' posts of images of the TRAEGER barn on LOUISIANA GRILLS, Instagram feeds Facebook pages, and Twitter feeds, and PIT BOSS' Facebook pages are reproduced on pages 1, 18, 24, 42, 46, 47, and 60 of Exhibit 12 to this Complaint

107. On April 5, 2019, Dansons posted on the official LOUISIANA GRILLS Instagram site a video showing its FOUNDERS SERIES grill and posted the following text: "We champion a long history where tradition meets innovation.

Dating back to our relationship with the man himself, Joe Traeger, the inventor of wood pellet grills, we continue to cherish elegant craftsmanship in the future of this industry. We are proud to introduce the Founders Series by Louisiana Grills . . . .” A true and correct copy of a screenshot of Dansons' April 5, 2019 Instagram post, as visible on the mobile version of Instagram, is reproduced below:



108.    Additional Dansons' posts linking Joe Traeger to Dansons' Founders Series on LOUISIANA GRILLS' Instagram feeds, Facebook pages, and Twitter feeds, and PIT BOSS' Facebook pages are reproduced on pages 1-5, 7-10, 13-14, 16-18, 21-28, 30-33, 36-37, 40-42, 45-53, 56-58-60, and 63 of Exhibit 12 to this Complaint.

4827-5467-8938

109. On April 26, 2019, Dansons posted on the official LOUISIANA GRILLS Instagram site a photograph of Dan Thiessen with the words:

"We're not competition anymore either,
we're all one family"
—Dan Thiessen
FOUNDERS SERIES
BY LOUISIANA GRILLS

Dansons further posted the following text: "At Louisiana Grills, we value community over competition. We embrace Joe Traeger with open arms, he is one of us, one of the family. This is how we pioneer into the future, together, as one . . .." A true and correct copy of a screenshot of Dansons' April 18, 2019 Instagram post, as visible on the mobile version of Instagram, is reproduced below:



4827-5467-8938

110.    Additional Dansons' posts on LOUISIANA GRILLS' Instagram feeds, Facebook pages, and Twitter feeds, and PIT BOSS' Facebook pages linking Joe Traeger to Dansons generally are reproduced in Exhibit 12, to this Complaint.

111.    Brian Traeger has a personal Twitter account on which he has posted the photographs from Dansons' September 20, 2018 marketing release and re-tweeted the LOUISIANA GRILLS tweets that are included on pages 47, 49, 52, 54, 55, 56, 58, 59, 61, and 62 of Exhibit 12.

112.    Dansons has included disclaimers on some of its posts, stating: "Dansons does not endorse, support or market with Traeger Grills, LLC." Dansons' disclaimer is ineffective to dispel consumer confusion regarding the relationship between Dansons and Traeger Grills. It is entirely irrelevant whether Dansons "endorse[s], support[s] or market[s] with" Traeger Grills.  The question left open by this purported disclaimer is whether Traeger Grills "endorse[s], support[s] or market[s] with" Dansons, which it clearly does not.

113.    To make matters worse, in many instances, Dansons does not use even this inadequate disclaimer on its posts. (See pages 3, 13, 17, 19, 20, 22, 23, 36, 38, 41, 43, 44, 47, 56, 59, 60, 61, 62, and 64 of Exhibit 12 showing Dansons' LOUISIANA GRILLS' Instagram feeds, Facebook pages, and Twitter feeds, and PIT BOSS' Facebook pages using Joe and/or the TRAEGER Barn with no disclaimer whatsoever).

114.    In some other instances, even where Dansons LOUISIANA GRILLS' Instagram feeds, Facebook pages, and Twitter feeds, and PIT BOSS' Facebook pages do include the purported disclaimer, it appears only as tiny text in photographs (see pages 4, 7, 8, 21, 24, 27, 28, 30, 31, 45, 46, 49, 50, 51, and 63 of Exhibit 12) or the consumer is required to scroll down or click on a link to "See More" to view the disclaimer (see pages 11, 14, 15, 16, 18, 37, 39, 40, 42, and 57 of Exhibit 12).

115.     And even if consumers noticed Dansons' purported disclaimer, it is entirely insufficient to dispel customer confusion. The use of Joe Traeger and the TRAEGER Barn to directly promote Dansons' products is likely to confuse (and, as set forth below, has confused) consumers into believing, incorrectly, that Traeger Grills (the company with whom the public has associated Joe Traeger and the TRAEGER Barn since the 1980s) purchased, is working with or otherwise endorses Dansons.   Dansons' disclaimer does nothing to dispel this myth and inform the public of the truth: that Traeger Grills has no relationship with Dansons, that Traeger Grills does not endorse any Dansons products, and that Dansons has no right to use the names, likenesses or reputations of Joe Traeger or Brian Traeger or any of the TRAEGER marks or other intellectual property in any of its advertisements.

## VII.     Dansons' Misappropriation Has Caused Consumer Confusion

116.     Dansons' successful confusion of consumers and the failure of its disclaimers to avert such confusion are evident on Dansons' own social media feed.

117.     In the comments section for Dansons' June 4, 2019 Instagram post, @desmithmark posted a comment asking: "Are Louisiana grills the same company as Traeger."

118.     The correct answer, of course, was "No.  They are entirely different companies; and Traeger Grills in no way supports or endorses Dansons."  Instead, Dansons misleadingly responded: "While Dansons does not support, market or endorse Traeger Grills LLC, Brian Traeger is part of our Product Development Team and we appreciate what the Traegers have done for the Pellet Grill Community." This was designed to create even more confusion regarding Traeger's affiliation with Dansons and LOUISIANA GRILLS.  A true and correct copy of a screenshot of Dansons' June 4, 2019 Instagram post showing @desmithmark's question and Dansons' response is reproduced below:



119.    Not surprisingly, @desmithmark remained confused.  On or about June 16, 2019, @desmithmark posted another comment on LOUISIANA GRILLS' Instagram feed in response to Dansons' June 15, 2019 post of a video of Joe demonstrating how to re-heat a pork chop that had been previously smoked on a LOUISIANA GRILL.  @Desmithmark asked: "Yeah I still don't understand the connection between Traeger and Louisiana Grills."  Dansons replied by directing @desmithmark to Dansons' September 20, 2018 press release: "@desmithmark Hey there, we released a press release about this here: https://louisiana-grills.com/media/traeger-founder-joins-louisiana-grills."  As noted above, however, that press release was in itself false and misleading.  A true and correct copy of a screenshot of Dansons' June 15, 2019 Instagram post showing @desmithmark's question and Dansons' response is reproduced below:

4827-5467-8938



120.     Another member of the consuming public identified as @gfmarlin88 also expressed confusion in connection with Dansons' June 15, 2019 Instagram post: "Why is Joe Traeger now advertising for dansons/Louisiana Grills?"  Again, Dansons responded simply by directing @gfmarlin88 to the misleading September 20, 2018 press release.

121.     On April 2, 2019, the LOUISIANA GRILLS Facebook account posted an image of the TRAEGER Barn and Joe Traeger.  In the comments section, a user named Vaughn Shirley asked "Is Traeger building the LG or is Joe Traeger now with LG?"  A true and correct copy of a screenshot of the April 2, 2019 LOUISIANA GRILLS Facebook account showing Vaughn Shirley's question is reproduced below:

4827-5467-8938



\* \* \*



122.    On June 15, 2019, Dansons posted an image of the TRAEGER Barn on the LOUISIANA GRILLS Instagram account discussing a visit to "Joe Traeger's Barn" to listen & learn from the founder of the original pellet grill, Joe

Traeger . . . ."  In response to the post, an Instagram user named @barbequetoday commented "Did the founders of Traeger have a hand in Louisiana Grills? If so that would be a sweet story to hear!"  A true and correct copy of a screenshot of Dansons' June 15, 2019 Instagram post showing @barbequetoday's question is reproduced below:



123.    On May 18, 2019, Dansons posted on the PIT BOSS Facebook page four images of persons using PIT BOSS grills, one of whom is Joe Traeger standing in front of a sign that says "Reserved Parking for Joe Traeger." In response to the post, a Facebook user named John Call commented "Why does one photo have a sign for 'Joe Traeger'? As if an ad for Traeger???"  A true and correct copy of a screenshot of Dansons' May 18, 2019 Facebook post showing John Call's question is reproduced below:

4827-5467-8938



\* \* \*



124.    Dansons' confusing use of the TRAEGER name as well as Joe's

likeness, reputation and goodwill is further evidenced in press articles that

perpetuate the confusion.  Thus, an article written by Jennifer Bringle entitled

*Fired Up: Hot Products and Trends Debuted at HPBExpo* and published on or

about April 8, 2019 at https://www.casualliving.com/web-exclusive/fired-schroeters-win-donna-h-myers-award/ states:

> Louisiana Grills teamed up with Joe Traeger—the inventor of the pellet grill— for their new Founders Series. The collaboration between Traeger and Louisiana Grills founder Dan Thiessen was designed for independent retailers and offers wood-fired flavor with the push of a button with a WiFi-and Bluetooth-enabled touch pad and mobile app controls. "The Founders Grill is for dealers—it's not for the big box side," says Traeger. "It's exciting, and we're moving fast—it's going to be a good partnership.'

125.    Understandably given Dansons' campaign of confusion, the article's use of "Traeger" leaves the misimpression that Traeger Grills and Dansons are affiliated, which is not true.

126.    Most recently, Dansons has announced its intent to hold an event at the TRAEGER Barn in September that it has billed as "The Ultimate Grilling Experience."  In the Instagram and Facebook posts announcing the event, Dansons features the TRAEGER Barn with the TRAEGER name, which caused at least one user to ask, "Why is the Traeger barn in the background?" (Exhibit 12 at 71).



4827-5467-8938

## VIII.  Dansons Intends to Escalate Its Use of Joe Traeger's Name, Likeness, and Goodwill to Market its Upcoming Founders Series

127.    Dansons' use of the Traeger name and of Joe Traeger's likeness (and the resulting consumer confusion) will only get worse.  Dansons has made clear that it intends to rely heavily on Joe Traeger's name and likeness, and the goodwill that he has accumulated as the founder of the wood pellet grill, in marketing the FOUNDER SERIES products.

128.    For example, in announcing the FOUNDERS SERIES grills in its March 14, 2018 marketing release, Dan Thiessen stated that "Teaming up with Joe Traeger has been a blessing. He's fired up and brings fresh ideas to the table, and we work very well together. This journey has just begun, and we are already excited about what we are bringing to market, and what we will be offering our customers. We've just scratched the surface of this partnership and its capabilities – and neither of us is going anywhere." (Exhibit 11).  Dansons has repeated these same sentiments more recently.  (Exhibit 12 at pages 8, 31, and 51).

129.    Indeed, Dansons marketing of its new FOUNDERS SERIES grills that it intends to release this Fall and its September "Ultimate Grilling Experience" are based largely on Traeger's intellectual property.  (*See* Exhibit 12 at pages 14, 16-18, 21-37, 40-42, 45-56, 58-60, 63, and 71.)

130.    In addition to the social media posts discussed above and reflected in Exhibit 12, Dansons displayed a huge poster with Joe Traeger's likeness and name at the National Hardware Show in Las Vegas in connection with their "unveil[ing]" of the Founders Series.

131.    Upon information and belief, Dansons has also assumed Joe Traeger's lease on the TRAEGER Barn from the Monastery that owns it, demonstrating that Dansons intends to continue using the TRAEGER Barn to impermissibly connect Joe and Brian and Traeger Grills to Dansons

-36-

## IX.  Dansons' Other Unfair Business Practices

### A.  False and Misleading Reviews

132.  Upon information and belief, Dansons caused false and misleading reviews of Pit Boss products to be posted on Walmart.com and Lowes.com.

133.  While these reviews purport to represent legitimate reviews authored by owners of Pit Boss products, in fact it appears that they were authored by Dansons to make its products look popular and well liked.

134.  Reviews of Pit Boss products spiked in February 2018, with more than 3,000 reviews posted, an increase of more than 300%.



135.  Many of these reviews were not submitted directly by purchasers of the products, but instead indicate that the review was "Written by a customer while visiting dansons.com."

136.  For example, Walmart.com shows more than 700 reviews for the Pit Boss 700FB grill.[2]  More than 550 of these reviews say that they were "written by a customer while visiting dansons.com" and more than 530 of these reviews are dated between February 10 and February 28, 2018.  Walmart.com lists a single review purportedly from dansons.com on April 2, 2018, 14 reviews purportedly from dansons.com in March 2018, and a single review purportedly from

---

[2] Avaukabke at https://www.walmart.com/ip/Pit-Boss-700FB-Wood-Fired-Pellet-Grill-w-Flame-Broiler/52162941.

4827-5467-8938

dansons.com on September 3, 2018. The vast majority of the reviews purportedly from dansons.com are positive, with more than 500 of the reviews giving 4 or 5 stars.

137. Walmart.com reviews for other Pit Boss products contain duplicate reviews. Walmart.com shows more than 600 reviews for the Pit Boss 700FB grill cover.[3] The vast majority of these reviews are duplicates of the reviews posted for the Pit Boss 700FB grill.

138. Walmart.com shows more than 650 reviews for the Pit Boss Classic 700 sq. in. Wood Fired Pellet Grill.[4] The vast majority of these reviews are duplicates of the reviews posted for the Pit Boss 700FB grill and the Pit Boss 700FB grill cover.

139. On information and belief, these reviews are not genuine. It cannot be the case that users submitted identical reviews for three separate Pit Boss products. Nor is it plausible that the reviews were "[w]ritten by a customer while visiting dansons.com" because Dansons.com has never had a link to elicit consumer feedback for their products. Further, the dates on the reviews are highly suspicious, with the vast majority spread over every day in the month of February 2018. Notably, Pit Boss was first offered for sale in Walmart stores and over Walmart.com in early 2018.

140. Further, the Pit Boss and Louisiana Grill websites have significantly fewer reviews for the same products than appear on the Walmart and Lowes websites. For example, the Pit Boss 820FB has four reviews on Pitboss-grills.com, while the same product has 329 ratings on Lowes.com, many of which purportedly were written by customers at dansons.com. Similarly, the Pit Boss 700 FB has 4 reviews on the Pit Boss website but more than 700 reviews on

---

[3] Available at https://www.walmart.com/ip/Pit-Boss-700FB-Classic-Pellet-Grill-Cover/52162952.
[4] Available at https://www.walmart.com/ip/Pit-Boss-Classic-700-sq-in-Wood-Fired-Pellet-Grill-w-Flame-Broiler/838778838.

4827-5467-8938

Walmart.com. It is implausible that Dansons would not use on its own family of websites legitimate reviews submitted by customers to Dansons.com.

141. Moreover, the volume of reviews for Pit Boss products is inconsistent with the volume of products sold. Pit Boss has a significantly smaller market share than Traeger and has been selling grills for only 4-5 years. Accordingly, Pit Boss has sold far fewer units that Traeger. However, Pit Boss products on the Walmart and Lowes Website have a huge number of reviews— significantly more than Traeger products that have sold more units.

142. By contrast, Amazon.com, which limits the ability of users to review products that they have not purchased in an attempt to limit fake reviews, does not show the same discrepancy in reviews apparent on the Lowes and Walmart websites. For example, the Pit Boss 700 FB has 169 reviews on Amazon.com, while the Traeger Grills Lil'Tex Elite 22—first offered for sale on a similar date— has 484 reviews. Thus, the huge discrepancy in reviews between Traeger Grills and Pit Boss products appears only on websites that are vulnerable to fake reviews.

**B.     Dansons' and George Koster's Theft of Traeger's Trade Secrets**

143. While Defendant Koster worked at Traeger Grills he developed the design for a vertical smoker with a round body and short angular legs. Defendant Koster created a prototype of this product before he left Traeger.

144. On information and belief, when Mr. Koster left Traeger Grills he kept possession of the design for this product developed on behalf of Traeger Grills and, after joining Dansons, transferred the design for this prototype vertical smoker to Dansons.

145. On information and belief, Mr. Koster communicated with Dansons personnel in Arizona to transfer this design.

146.    In late 2018 Dansons released what it calls the "Whiskey Still," which is substantially similar to the product that Mr. Koster designed and built while at Traeger Grills.

<u>**First Cause of Action**</u>

<u>**(Infringement of TRAEGER Registered Trademark Against Dansons)**</u>

<u>**(15 U.S.C. §§ 1114(1))**</u>

147.    Plaintiff repeats and realleges the allegations above.

148.    Traeger Grills has exclusively and continuously used in commerce throughout the United States the TRAEGER trademark in the grill market since 1987. Traeger Grills owns Trademark Registration No. 3244718 for TRAEGER as used in connection with the sale of barbeque grills, grill accessories, and wood pellets for grilling food. Traeger Grills' Trademark Registration No. 3244718 is registered on the principal register in the United States Patent and Trademark Office.

149.    Traeger Grills has invested significant resources in marketing and advertising to increase consumer awareness of its brand and of its trademarks in TRAEGER, including its use in the image of the TRAEGER Barn, which prominently displays the TRAEGER trademark on its wall.

150.    As a result of Traeger Grills' marketing and advertising, consumers view the TRAEGER trademark as distinctive products manufactured and sold by Traeger Grills.

151.    Dansons has been, and currently is, using Traeger Grills' TRAEGER trademark, which includes the use of TRAEGER in images of the TRAEGER Barn with the TRAEGER trademark prominently displayed thereon and the use of the names, Joe Traeger, Brian Traeger, and Traeger in its marketing releases and in its social media advertising of its pellet grill products, including the FOUNDERS SERIES grills, as shown herein.

-40-

152.    Traeger Grills has not authorized Dansons to use TRAEGER in its marketing or advertising of grills.

153.    Dansons' unauthorized use of the TRAEGER trademark, including the use of TRAEGER in images of the TRAEGER Barn with the TRAEGER trademark prominently displayed thereon, and including the use of the names, Joe Traeger, Brian Traeger, and Traeger in its marketing releases and in its social media advertising of its pellet grill products, and including the FOUNDERS SERIES grills, as shown herein, is likely to cause confusion, mistake, or deception in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1) with respect to the TRAEGER registered trademark.

154.    Dansons' use of the TRAEGER trademark, including the use of TRAEGER in images of the TRAEGER Barn with the TRAEGER trademark prominently displayed thereon, and including the use of the names, Joe Traeger, Brian Traeger, and Traeger in its marketing releases and in its social media advertising of its pellet grill products, and including the FOUNDERS SERIES grills, as shown herein, has caused actual confusion among consumers of pellet grills, as set forth herein.

155.    Dansons' acts have been undertaken with full knowledge of Traeger's rights in and to the TRAEGER trademark, including Traeger Grills' rights in images of the TRAEGER Barn with the TRAEGER trademark prominently displayed thereon and in the names Joe Traeger, Brian Traeger, and Traeger in connection with the sales and marketing of pellet grills, and have been undertaken with the willful and deliberate intent to cause confusion, mistake, and deception among members of the relevant public and to trade on the goodwill associated with the TRAEGER trademark.

156.    The acts of Dansons constitute infringement of Traeger Grills' registered TRAEGER trademark under Section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a).

-41-

1    157.    As a result of Dansons' trademark infringement, Traeger Grills has

2   suffered damage to its business, reputation, and goodwill in an amount to be

3   ascertained at trial, and Dansons has made profits it would not have made but for

4   its wrongful conduct.

5    158.    As a result of Dansons' acts of trademark infringement, Traeger

6   Grills has suffered and will continue to suffer irreparable injury, including actual

7   customer confusion, the inability to control the nature and quality of Dansons'

8   competing goods, and loss of goodwill and harm to its advertising efforts for

9   which it has no adequate remedy at law. Unless Dansons is restrained by this

10  Court from continuing its violations, these injuries to Traeger will continue to

11  occur.

12   159.    Dansons' acts of trademark infringement involve the use by

13  Dansons' of a counterfeit mark, TRAEGER, pursuant to 35 U.S.C. § 1116(d) of

14  the Lanham Act.

15  **Second Cause of Action**

16  **(Infringement of IRONWOOD Registered Trademark Against Dansons)**

17  **(15 U.S.C. §§ 1114(1))**

18   160.    Plaintiff repeats and realleges the allegations above.

19   161.    Traeger Grills has exclusively and continuously used in commerce

20  throughout the United States the IRONWOOD trademark in the grill market since

21  2017.  Traeger owns Trademark Registration No. 5628801 for IRONWOOD as

22  used in connection with the sale of barbeque grills. Traeger Grills' Trademark

23  Registration No. 5628801 is registered on the principal register in the United

24  States Patent and Trademark Office.

25   162.    Traeger Grills has invested significant resources in marketing and

26  advertising to increase consumer awareness of its brand and of its IRONWOOD

27  trademark, including social media and retail marketing as well as advertising.

28

-42-

163.    As a result of Traeger Grills' marketing and advertising, consumers view the IRONWOOD trademark as distinctive of products manufactured and sold by Traeger.

164.    Dansons has announced its intent to use the IRONWOOD trademark in connection with a forthcoming model of wood pellet grill.

165.    Traeger Grills has not authorized Dansons to use IRONWOOD in its marketing or advertising of grills.

166.    Dansons' unauthorized use of the IRONWOOD trademark, is likely to cause confusion, mistake, or deception in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1) with respect to the TRAEGER registered trademark.

167.    Dansons' acts have been undertaken with full knowledge of Traeger Grills' rights in and to the IRONWOOD trademark, and have been undertaken with the willful and deliberate intent to cause confusion, mistake, and deception among members of the relevant public and to trade on the goodwill associated with the IRONWOOD trademark.

168.    The acts of Dansons constitute infringement of Traeger Grills' registered TRAEGER trademark under Section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a).

169.    As a result of Dansons' acts of trademark infringement, Traeger Grills will suffer irreparable injury, including customer confusion, the inability to control the nature and quality of Dansons' competing goods, and loss of goodwill and harm to its advertising efforts for which it has no adequate remedy at law. Unless Dansons is restrained by this Court from continuing its violations, these injuries to Traeger Grills will occur.

4827-5467-8938

## Third Cause of Action

### (False Designation of Origin For Use of the TRAEGER Barn
### Against Dansons)

### (15 U.S.C. §§ 1125(a))

170.    Plaintiff repeats and realleges the allegations above.

171.    Traeger Grills has used in United States commerce the iconic TRAEGER barn in advertising going back to 2005 and began using its current barn logo and design in 2014.

172.    Plaintiff owns the exclusive rights to use the image of the TRAEGER Barn in connection with the marketing and sale of grills and grilling accessories.

173.    Traeger Grills has invested significant resources in marketing and advertising to increase consumer awareness of the TRAEGER Barn in connection with its sale and marketing of pellet grills.

174.    Traeger Grills' marketing and advertising surrounding the TRAEGER Barn include the design and sale of accessories featuring the TRAEGER Barn such as T-Shirts, hats, and sweaters.  Traeger Grills also has used the image of the TRAEGER Barn in retail signage and in brochures provided to consumers and retail partners.  True and correct copies of images reflecting these uses are reflected in Exhibit 13 to this Complaint.

175.    As a result of Traeger Grills' marketing and advertising, consumers view the TRAEGER Barn as distinctive and as identifying products manufactured and sold by Traeger.

176.    Dansons' infringing uses of the TRAEGER Barn are described above and in Exhibit 12.

177.    Traeger Grills has not authorized Dansons' infringing uses of the TRAEGER Barn in connection with the marketing and sale of pellet grills.

178.    Dansons' unauthorized use of the TRAEGER Barn is likely to cause confusion, mistake, or deception in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

179.    Dansons' use of images of the TRAEGER Barn has caused actual confusion among consumers of pellet grills, as set forth above.

180.    Dansons' acts have been undertaken with full knowledge of Traeger Grills' rights in and to the TRAEGER Barn and with the willful and deliberate intent to cause confusion, mistake, and deception among members of the relevant public and to trade on the goodwill associated with the TRAEGER Barn.

181.    The acts of Dansons constitute false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

182.    As a result of Dansons' acts of false designation of origin, Traeger Grills has suffered damage to its business, reputation, and goodwill in an amount to be ascertained at trial, and Dansons has made profits it would not have made but for its wrongful conduct.

183.    As a result of Dansons' acts of false designation of origin, Traeger Grills has suffered and will continue to suffer irreparable injury, including actual customer confusion, the inability to control the nature and quality of Dansons' competing goods, and loss of goodwill and harm to its advertising efforts for which it has no adequate remedy at law. Unless Dansons is restrained by this Court from continuing its violations, these injuries to Traeger Grills will continue to occur.

## Fourth Cause of Action

### (False Designation of Origin For Use of the TAILGATER Mark Against Dansons)

### (15 U.S.C. §§ 1125(a))

184.    Plaintiff repeats and realleges the allegations above.

-45-

185.    Traeger Grills has used in United States commerce the word TAILGATER to describe its portable wood pellet grill since 2016.

186.    Plaintiff owns the exclusive rights to use the mark TAILGATER in connection with the marketing and sale of grills and grilling accessories.

187.    Traeger Grills has invested significant resources in marketing and advertising to increase consumer awareness of the TAILGATER model in connection with TRAEGER's sale and marketing of pellet grills.

188.    As a result of Traeger Grills' marketing and advertising, consumers view the TAILGATER mark as distinctive and as identifying products manufactured and sold by Traeger Grills.

189.    Dansons' infringing uses of the TAILGATER mark are described above and in Exhibit 14.

190.    Traeger has not authorized Dansons' infringing uses of the TAILGATER mark in connection with the marketing and sale of pellet grills.

191.    Dansons' unauthorized use of the TAILGATER mark is likely to cause confusion, mistake, or deception in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

192.    Dansons' acts have been undertaken with full knowledge of Traeger Grills' rights in and to the TAILGATER mark and with the willful and deliberate intent to cause confusion, mistake, and deception among members of the relevant public and to trade on the goodwill associated with the TAILGATER mark.

193.    The acts of Dansons constitute false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

194.    As a result of Dansons' acts of false designation of origin, Traeger Grills has suffered damage to its business, reputation, and goodwill in an amount to be ascertained at trial, and Dansons has made profits it would not have made but for its wrongful conduct.

-46-

1   195.   As a result of Dansons' acts of false designation of origin, Traeger

2   Grills has suffered and will continue to suffer irreparable injury, including actual

3   customer confusion, the inability to control the nature and quality of Dansons'

4   competing goods, and loss of goodwill and harm to its advertising efforts for

5   which it has no adequate remedy at law. Unless Dansons is restrained by this

6   Court from continuing its violations, these injuries to Traeger Grills will continue

7   to occur.

8   **Fifth Cause of Action**

9   **(False Designation of Origin For Use of the PRO SERIES Mark**

10   **Against Dansons)**

11   **(15 U.S.C. §§ 1125(a))**

12   196.   Plaintiff repeats and realleges the allegations above.

13   197.   Traeger Grills has been using PRO SERIES in United States

14   commerce as a model name since 2016, and has been designating models as "Pro"

15   since 2015.

16   198.   Plaintiff owns the exclusive rights to use the mark PRO SERIES in

17   connection with the marketing and sale of grills and grilling accessories.

18   199.   Traeger Grills has invested significant resources in marketing and

19   advertising to increase consumer awareness of the PRO SERIES mark in

20   connection with TRAEGER's sale and marketing of pellet grills.

21   200.   As a result of Traeger Grills' marketing and advertising, consumers

22   view the PRO SERIES mark as distinctive and as identifying products

23   manufactured and sold by Traeger.

24   201.   Dansons' infringing uses of the PRO SERIES mark are described

25   above and in Exhibit 15.

26   202.   Traeger Grills has not authorized Dansons' infringing uses of the

27   TAILGATER mark in connection with the marketing and sale of pellet grills.

28

-47-

203. Dansons' unauthorized use of the PRO SERIES mark is likely to cause confusion, mistake, or deception in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

204. Dansons' acts have been undertaken with full knowledge of Traeger Grills' rights in and to the PRO SERIES mark and with the willful and deliberate intent to cause confusion, mistake, and deception among members of the relevant public and to trade on the goodwill associated with the PRO SERIES mark.

205. The acts of Dansons constitute false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

206. As a result of Dansons' acts of false designation of origin, Traeger Grills has suffered damage to its business, reputation, and goodwill in an amount to be ascertained at trial, and Dansons has made profits it would not have made but for its wrongful conduct.

207. As a result of Dansons' acts of false designation of origin, Traeger Grills has suffered and will continue to suffer irreparable injury, including actual customer confusion, the inability to control the nature and quality of Dansons' competing goods, and loss of goodwill and harm to its advertising efforts for which it has no adequate remedy at law. Unless Dansons is restrained by this Court from continuing its violations, these injuries to Traeger Grills will continue to occur.

## Sixth Cause of Action

### (Violation of the Right of Publicity Against Dansons)

### (Arizona Common Law)

208. Plaintiff repeats and realleges the allegations above.

209. Traeger Grills has the exclusive right to use Joe and Brian Traeger's name, likeness, and goodwill in connection with the manufacture, marketing, and sale of grills and grill-related products.

210.    Dansons' use of the likenesses, names, and goodwill of Joe and Brian in its advertising and marketing of its products constitutes commercial use of Joe and Brian's rights of publicity.

211.    Dansons is not authorized to make commercial use of Joe and Brian's names, likenesses, or goodwill in connection with the manufacture, marketing, and sale of grills and grill-related products.

212.    Dansons' actions violate Traeger Grills' right of publicity, which has caused, and will continue to cause, Traeger Grills significant injury in the form of consumer confusion, loss of business opportunities, and loss of the distinctiveness of Traeger Grills' brand.

213.    As a result of Danson's unfair business practices, Traeger Grills has suffered and will continue to suffer damages to its business, reputation, and goodwill in an amount to be ascertained at trial.

214.    As a result of Danson's unfair business practices, Traeger Grills has suffered and will continue to suffer irreparable injury, including actual customer confusion, the inability to control the nature and quality of Dansons' competing goods, and loss of goodwill and harm to its advertising efforts for which it has no adequate remedy at law. Unless Dansons is restrained by this Court from continuing its violations, these injuries to Traeger will continue to occur.

215.    Dansons' misappropriation of Traeger Grills' right to publicity was done willfully, wantonly, and maliciously and in reckless disregard for Traeger Grills' rights.

### Seventh Cause of Action

### (False Advertising Against Dansons)

### (15 U.S.C. § 1125(a))

216.    Plaintiff repeats and realleges the allegations above.

217. Dansons caused false and misleading reviews to enter interstate commerce by causing the reviews to be posted to Walmart.com and Homedepot.com.

218. These reviews are false and misleading because they purport to be written by consumers who purchased Dansons' products, but were, in fact, written by Dansons.

219. Dansons intended these reviews to deceive consumers into believing that its products were popular and well-liked by consumers who had purchased Dansons' products.

220. Whether a review was written by a neutral purchaser as opposed to written by the manufacturer is material to consumers.

221. As a result of Dansons' false advertising', Traeger has suffered competitive harm because it appears to consumers as though Dansons' products are more popular and have higher ratings that Traeger products.

222. As a result of Dansons' false and misleading advertising, Traeger Grills has suffered harm in the form of loss of goodwill and lost sales, among other harms.

223. Based on the aforesaid acts, Dansons has unlawfully and wrongfully derived, and will continue to derive, income, profits and ever-increasing goodwill from their activities at the expense, and to the detriment, of Traeger Grills, which has been, and will continue to be, damaged from Dansons' conduct in an amount to be determined at trial.

224. Dansons' false and misleading advertising was done willfully, wantonly, and maliciously and in reckless disregard for Traeger Grills' rights.

### Eighth Cause of Action

### (Unfair Competition Against Dansons)

### (Arizona Common Law)

225. Plaintiff repeats and realleges the allegations above.

226.    Through its misleading use of Traeger Grills' marks, Dansons is knowingly and intentionally misrepresenting and falsely designating to the general public within Arizona the affiliation, connection, association, origin, source, sponsorship, endorsement and approval of Dansons' products by Traeger Grills in order to create a likelihood of confusion by the public as to the affiliation, connection, association, origin, source, approval, endorsement and sponsorship of Dansons' products.

227.    Dansons' false association and unfair competition has been exacerbated by its earlier actions as well, including without limitation its efforts to replicate the look and feel of Traeger products, its copying of Traeger Grills' marketing strategy and content, its copying of Traeger Grills' recipes, and its mimicry of Traeger Grills' website look and feel.

228.    The aforesaid acts of Dansons constitute unfair competition under the common law of the State of Arizona.

229.    Dansons has also engaged in unfair competition under the common law of the State of Arizona through its misappropriation of rights of publicity exclusively owned by Traeger Grills and through its use of false reviews [and misleading comparisons] to promote its products at the expense of Traeger Grills.

230.    As a result of Dansons' unfair business practices, Traeger Grills has suffered and will continue to suffer irreparable injury, including actual customer confusion, the inability to control the nature and quality of Dansons' competing goods, and loss of goodwill and harm to its advertising efforts for which it has no adequate remedy at law. Unless Dansons is restrained by this Court from continuing its violations, these injuries to Traeger Grills will continue to occur.

231.    As a result of Dansons' unfair competition Traeger has suffered harm in the form of loss of goodwill and lost sales, among other harms.

232.    Based on the aforesaid acts, Dansons has unlawfully and wrongfully derived, and will continue to derive, income, profits and ever-increasing goodwill

-51-

from its activities at the expense, and to the detriment, of Traeger Grills, which has been, and will continue to be, damaged from Dansons' conduct in an amount to be determined at trial.

233.    Dansons' acts of unfair competition were done willfully, wantonly, and maliciously and in reckless disregard for Traeger Grills' rights.

## Ninth Cause of Action

## (Intentional Interference With Contractual Relations Against Dansons)

## (Arizona Common Law)

234.    Plaintiff repeats and realleges the allegations above.

235.    Joe and Brian entered into a contractual relationship with Traeger Grills in connection with their sale of the business in 2006.

236.    Under those agreements, Joe and Brian agreed to grant Traeger Grills the exclusive right to use the TREAGER mark, as well as their names, likenesses, and goodwill in connection with the sale and marketing of grills and grill-related products.

237.    Dansons was aware of the contractual relationship between Traeger Grills and Joe and Brian.

238.    Dansons knowingly and intentionally induced Joe and Brian to breach their contract with Traeger Grills by, among other things, their unauthorized use of the TRAEGER mark and their unauthorized use of the rights of publicity that they had assigned to Traeger Grills.

239.    Joe and Brian's breach of the agreement—induced by Dansons—has directly and proximately caused Traeger Grills harm in the form of damage to its business, reputation, and goodwill in an amount to be ascertained at trial.  Joe and Brian intended or could have reasonably foreseen that Traeger Grills would be injured by their actions.

240.    In addition, based on the aforesaid acts, Dansons has unlawfully and wrongfully derived, and will continue to derive, income, profits and ever-

increasing goodwill from its activities at the expense, and to the detriment, of Traeger Grills, which has been, and will continue to be, damaged from Dansons' conduct in an amount to be determined at trial.

241.     Dansons' intentional interference with contractual relations was done willfully, wantonly, and maliciously and in reckless disregard for Traeger Grills' rights.

## Tenth Cause of Action

### (Theft of Trade Secrets Against All Defendants)

### (Arizona Uniform Trade Secrets Act, A.R.S. §§ 44-401, *et seq.*)

242.     Plaintiff repeats and realleges the allegations above.

243.     The design for the vertical smoker created by Defendant Koster was sufficiently novel, unique, or original that it is was not readily ascertainable to competitors.

244.     Traeger Grills derived independent economic value from the design created by Defendant Koster not being generally known to, or readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

245.     Traeger Grills took efforts reasonable under the circumstances to maintain the secrecy of all products and designs created by its employees.  Traeger Grills' efforts to maintain secrecy of such designs includes, but is not limited to, contracts with its employees that require employees to maintain confidentiality of information obtained or generated in the course of their employment with Traeger Grills.

246.     Mr. Koster had a duty to maintain the confidentiality of the designs that he created while working at Traeger Grills and was obligated not to provide that information to anyone that did not work at Traeger Grills.

247.     While employed at Traeger Grills, Mr. Koster signed at least two employee handbooks, one in 1992 and another in 2004.  Through these signatures,

-53-

Mr. Koster agreed not to "use Traeger designs, techniques, or customers to compete with [Traeger Grills] in providing products, processes or services for a period of Five (5) years . . . ."

248.    Mr. Koster breached this obligation by providing the design of the Whiskey Still to Dansons.

249.    On information and belief, Dansons knowingly acquired the designs for the Whiskey Still from Mr. Koster in breach of his confidentiality and non-compete obligations.

### Eleventh Cause of Action

### (Breach of Contract Against George Koster)

### (Arizona Common Law)

250.    Plaintiff repeats and realleges the allegations above.

251.    Mr. Koster entered into a contract with Traeger whereby he agreed not to "use Traeger designs, techniques, or customers to compete with [Traeger] in providing products, processes or services for a period of Five (5) years . . . ."

252.    Mr. Koster breached this agreement by using Traeger designs and techniques in the course of his employment with Dansons, including his use of the design that became the Dansons' Whiskey Still.

253.    Traeger has suffered damages as a result of Mr. Koster's breach in an amount to be determined at trial.

### Twelfth Cause of Action

### (Intentional Interference With Contractual Relations Against Dansons)

### (Arizona Common Law)

254.    Plaintiff repeats and realleges the allegations above.

255.    Mr. Koster entered into a contract with Traeger whereby he agreed not to "use Traeger designs, techniques, or customers to compete with [Traeger] in providing products, processes or services for a period of Five (5) years . . . ."

-54-

256. On information and belief, Dansons was aware of the contractual relationship between Traeger Grills and Mr. Koster.

257. Dansons induced Mr. Koster to breach this agreement by using Traeger designs and techniques in the course of his employment with Dansons, including his use of the design that became the Dansons' Whiskey Still.

258. Mr. Koster's breach of the agreement—induced by Dansons—has caused Traeger Grills harm in an amount to be ascertained at trial.

259. Dansons' intentional interference with contractual relations was done willfully, wantonly, and maliciously and in reckless disregard for Traeger Grills' rights.

## **Thirteenth Cause of Action**

## **(Unjust Enrichment Against Dansons)**

## **(Arizona Common Law)**

260. Plaintiff repeats and realleges the allegations above.

261. Dansons has been unjustly enriched by its misappropriation of Traeger Grills' trademarks, goodwill, and trade secrets.

262. Traeger Grills has been impoverished through Dansons' appropriation of its trademarks, goodwill, and trade secrets.

263. There is no justification for Dansons' enrichment at Traeger Grills' expense.

264. To the extent that Trager Grills cannot remedy this unjust enrichment through the causes of action alleged in this Complaint the Court should exercise its equitable powers to remedy Dansons' unjust enrichment.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Traeger Pellet Grills LLC prays for judgment against Defendants, granting the following relief:

4827-5467-8938

1      1.      A judicial determination and declaration that Dansons committed

2   acts of trademark infringement under 35 U.S.C. § 1114(1) with respect to

3   Dansons' use of Traeger Grills' TRAEGER trademark (Registration No.

4   3,244,718 on the principal register of the United States Patent and Trademark

5   Office);

6      2.      A judicial determination and declaration that Dansons committed

7   acts of false designation of origin under 35 U.S.C. § 1125(a) with respect to the

8   Traeger Marks;

9      3.      A judicial determination and declaration that Dansons committed

10  acts of false designation of origin under 35 U.S.C. § 1125(a) with respect to the

11  Traeger Grills trade dress;

12     4.      A judicial determination and declaration that Dansons has violated

13  Traeger's valuable rights of publicity in the name Traeger, as well as in the names

14  and likenesses of Joe and Brian Traeger;

15     5.      A judicial determination and declaration that Dansons committed

16  acts of false advertising under 35 U.S.C. § 1125(a);

17     6.      A judicial determination and declaration that Dansons committed

18  acts of unfair competition under Arizona common law;

19     7.      A judicial determination and declaration that Dansons committed

20  acts of intentional interference with Traeger Grills' contractual relationships;

21     8.      Find that Dansons will continue to infringe Traeger Grills'

22  intellectual property rights, including its rights of publicity, unless enjoined from

23  doing so;

24     9.      For a judicial determination and decree that Dansons and its

25  respective agents, licensees, and all other persons or entities acting or attempting

26  to act in active concert or participation with it or acting on its behalf, be

27  preliminarily and permanently enjoined from:

28

-56-

a.     Using, or publishing, in any manner, the TRAEGER name, images of the TRAEGER Barn, images of Joe or Brian Traeger, references to Joe as the founder or creator of the pellet grill, marks similar to the Traeger marks TAILGATER, PRO SERIES, and TAILGATER, and design and decorative components similar to the Traeger Trade Dress, (collectively the "Traeger Intellectual Property") in connection with the advertising, marketing, or sale of wood pellet grills and associated products.

b.     Publishing, in any manner, any statement that affiliates in any way Joseph Traeger, Brian Traeger, or Traeger with Dansons US LLC, LOUISIANA GRILLS, PIT BOSS, the FOUNDERS SERIES grills, Dan Thiessen, Jordan Thiessen, Jeff Thiessen or Dansons' products, or endorses Dansons' US LLC, LOUISIANA GRILLS, PIT BOSS, the FOUNDERS SERIES grills, or any Dansons' grill-related product ;

c.     Arranging any public appearance anywhere in the United States that communicates an endorsement by Joseph Traeger or Brian Traeger of Dansons' US LLC, LOUISIANA GRILLS, PIT BOSS, the FOUNDERS SERIES grills, or any other Dansons' grill-related product;

10.     For an order directing Defendant to permanently delete and/or remove from publication all publications using the Traeger Intellectual Property, including those identified above and in Exhibits 12, 14, and 15 to this Complaint.

11.     For an order directing Dansons to withdraw all reviews purportedly authored by purchasers of Dansons' products that were, in fact, authored by Dansons or its agents.

12.     For a judicial decree that orders Dansons to account for and pay to Traeger Grills all actual damages caused to Traeger Grills and, to the extent not included in actual damages, Defendant's profits arising from the trademark infringement acts alleged above under 15 U.S.C. § 1117(a), such damages and profits to be trebled under 15 U.S.C. § 1117(a);

-57-

13.     For a judicial declaration that Dansons' trademark infringement involves acts of intentionally using the TRAEGER mark, knowing that such mark is a counterfeit mark under 15 U.S.C. § 1116(d), and awarding Traeger Grills judgment for three times either its actual damages and Dansons' profits under 15 U.S.C. § 1117(a), or statutory damages under 15 U.S.C. § 1117(c).

14.     For a judicial decree that orders Dansons to account for and pay to Traeger Grills all actual damages caused to Traeger Grills and, to the extent not included in actual damages, Dansons' profits arising from the contributory false designation of origin acts with respect to the Traeger Marks alleged above, such damages and profits to be trebled under 15 U.S.C. § 1117(a);

15.     For a judicial decree that orders Dansons to account for and pay to Traeger all actual damages caused to Traeger Grills and, to the extent not included in actual damages, Dansons' profits arising from the contributory false designation of origin acts with respect to the Traeger Grills' trade dress alleged above, such damages and profits to be trebled under 15 U.S.C. § 1117(a);

16.     For a judicial declaration that this is an exceptional case within the meaning of, and for an award of attorneys' fees, pursuant to 15 U.S.C. § 1117(a);

17.     For a judicial order awarding to Traeger Grills costs under 15 U.S.C. § 1117(a), or as otherwise provided by law;

18.     Enter judgment for Traeger as to Dansons' unfair competition under Section 43(a) of the Lanham act, which has damaged Traeger Grills in an amount to be determined at trial;

19.     Enter judgment for Traeger as to Dansons' unfair competition under the common law of the State of Arizona, which has damaged Traeger Grills in an amount to be determined at trial;

20.     Enter judgment for Traeger Grills as to Dansons' misappropriation of Traeger Grills' right of publicity, which has damaged Traeger Grills in an amount to be determined at trial;

-58-

21. Enter judgment for Traeger as to Dansons' intentional interference with contractual relations, which has damaged Traeger Grills in an amount to be determined at trial;

22. Enter judgment for Traeger Grills as to Defendants' misappropriation of Traeger Grills' trade secrets, which has damaged Traeger Grills in an amount to be determined at trial;

23. Enter judgment for Traeger Grills and against Dansons for Traeger Grills' actual damages according to proof, and for any profits attributable to infringement of Traeger Grills' intellectual property, in accordance with proof.

24. Order Dansons to render an accounting to Traeger Grills for Defendant's profits or the value of the business opportunities received from the foregoing acts of infringement;

25. Enter judgment for Traeger Grills as to Defendant Koster's breach of contract, which has damaged Traeger Grills in an amount to be determined at trial;

26. For an award of damages according to proof at trial;

27. For a judicial declaration that Dansons' infringement, unfair competition, and intentional interference with contractual relations was done wantonly, and maliciously and in reckless disregard for Traeger Grills' rights;

28. For an award of treble damages;

29. For an award of statutory damages for use of counterfeit marks;

30. For an award of punitive or exemplary damages according to proof at trial;

31. For an award of court costs and attorneys' fees; and

32. For any such other and further relief as the Court may deem just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial pursuant to Rule 38 of the Federal Rules of Civil Procedure as to all issues so triable.

4827-5467-8938

| | |
|---|---|
| 1 | DATED:  July 16, 2019 | OSBORN MALEDON, P.A. |

s/ William D. Furnish

William J. Maledon
Dawn L. Dauphine
William D. Furnish,
2929 North Central Avenue, Suite 2100
Phoenix, AZ  85012-2793

MCKOOL SMITH, P.C.
Kirk D. Dillman, *pro hac vice* to be filed
Alan P. Block, *pro hac vice* to be filed
Robert J. King, *pro hac vice* to be filed
300 S. Grand Avenue, Suite 2900
Los Angeles, California 90071

**Attorneys for Plaintiff**

4827-5467-8938

I, THOMAS BURTON, am General Counsel for Traeger Pellet Grills, LLC. I have read the preceding COMPLAINT FOR TRADEMARK INFRINGEMENT AND RELATED STATE LAW CLAIMS. Based on my knowledge of the documents, records and information possessed by or known to me, the facts stated herein are correct.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this _16_ day of July, 2019, at Salt Lake City, Utah.

Thomas Burton