**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Traeger Pellet Grills LLC, | No. CV-19-04732-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Dansons US LLC, et al., | |
| Defendants. | |

Before the Court is Plaintiff Traeger Pellet Grills LLC's ("Traeger Grills") second motion for preliminary injunction, which is fully briefed. (Docs. 58, 65, 66.) For the following reasons, Traeger Grills' motion is denied.[1]

**I. Background**[2]

On October 3, 2019, the Court issued an order enjoining Dansons US LLC ("Dansons") from:

> 1. Using or assisting or consenting to others in using or publishing, in any manner, the Traeger name, images of the Traeger Barn location in Mt. Angel, Oregon, images of Joe or Brian Traeger, references to Joe as the founder or creator of the pellet grill (collectively the "Traeger Intellectual Property") in connection with the advertising, marketing,

---

[1] Traeger Grills' request for oral argument is denied because the issues are adequately briefed and oral argument will not help the Court resolve the motion. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f); *Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

[2] The Court incorporates by reference the background section from its order granting Traeger Grills' first motion for preliminary injunction (Doc. 53 at 1-4).

>                    or sale of wood pellet grills and associated products;
>
> 2. Publishing, in any manner, any statement that affiliates in any way Joe Traeger, Brian Traeger, or Traeger Grills with Dansons US LLC, Louisiana Grills, Pit Boss, the Founders Series grills, Dan Thiessen, Jordan Thiessen, Jeff Thiessen or Dansons' products or endorses Dansons US LLC, Louisiana Grills, Pit Boss, the Founders Series grills, or any Dansons grill-related product; and
>
> 3. Arranging any public appearance anywhere in the United States that communicates an endorsement by Joe Traeger or Brian Traeger of Dansons' US LLC, Louisiana Grills, Pit Boss, the Founders Series grills, or any other Dansons grill-related product.

(Doc. 53 at 18.) On October 17, 2019, Traeger Grills filed a motion asking for clarification whether the Court's October 3, 2019 order enjoined Dansons from marketing its products under the "Founders Series" name or, in the alternative, for a preliminary injunction enjoining such behavior. (Doc. 58.) The same day, the Court clarified that its October 3, 2019 order did not enjoin Dansons from continuing to market its products under the "Founders Series" name, thereby transforming Traeger Grills' October 17, 2019 motion into its second motion for preliminary injunction. (Doc. 60.) The motion is now ripe.

**II. Legal Standard**

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Am. Trucking Ass'n, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009). These elements may be balanced on a sliding scale, whereby a stronger showing of one element may offset a weaker showing of another. *See Alliance for the Wild Rockies v. Cottrell*, 632 F. 3d 1127, 1131, 1134-35 (9th Cir. 2011). But the sliding-scale approach does not relieve the movant of the burden to satisfy all four prongs for the issuance of a preliminary injunction. *Id.* at 1135. Instead, "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury

1 and that the injunction is in the public interest." *Id.* at 1135. The movant bears the burden of proof on each element of the test. *Envtl. Council of Sacramento v. Slater*, 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000).

**III. Discussion**

Having carefully considered the parties' briefs, the Court finds that Traeger Grills has not met its burden under the preliminary injunction test.

    **A. Likelihood of Success on the Merits**

        **1. Right of Publicity Claim**

In its right of publicity claim, Traeger Grills asserts that Dansons' continued marketing of its products under the "Founders Series" name misappropriates Joe Traeger's right of publicity by exploiting an indicia of Joe's identity, namely, his status as the founder of the wood pellet grill. In other words, Traeger Grills contends that mere reference to "founders" is sufficient to identify Joe Traeger, and therefore is exploitative. (Doc. 58 at 7-8.) The Court determines that Traeger Grills is unlikely to prevail on this claim.

Under Arizona law, a cause of action may be brought "against one who appropriates the commercial value of a person's identity for purposes of trade[] in advertising the user's goods or services." *In re Estate of Reynolds*, 327 P.3d 213, 217 (Ariz. Ct. App. 2014); *see ACT Grp., Inc. v. Hamlin*, No. CV-12-567-PHX-SMM, 2015 WL 11117191, at *2 (D. Ariz. Apr. 27, 2015). Courts have generously protected celebrities' rights of publicity, extending protections beyond their names and likenesses to other attributes that make them distinctive. *See, e.g., Motschenbacher v. R.J. Reynolds Tobacco Co.*, 498 F.2d 821, 826 (9th Cir. 1974) (finding use of Plaintiff, a NASCAR champion's, racecar with minor alterations in cigarette ad invoked Plaintiff's identity and violated his right of publicity); *White v. Samsung Elecs. Am., Inc.*, 971 F. 2d 1395, 1399 (9th Cir. 1992) (concluding that Samsung's advertisement depicting a robot designed to resemble Vanna White on Wheel of Fortune misappropriated her right of publicity); *Midler v. Ford Motor Co.*, 849 F.2d 460, 463 (9th Cir. 1988) (finding that use of a Bette Midler voice impersonator in commercial violated Midler's right of publicity due to the distinctiveness of her voice).

Traeger Grills asserts that Joe Traeger has sufficient recognition in the grill community to be considered a celebrity for the purposes of his right of publicity analysis. (Doc. 66 at 4.) Although the Court is unconvinced that Joe Traeger's celebrity parallels that of the Emmy, Grammy, and Tony award winners, professional athletes, or television personalities that courts have previously labeled celebrities, even if Joe Traeger were a celebrity, Traeger Grills is nevertheless unlikely to prevail on its right of publicity claim.

The term "Founders" is unlikely so distinctive as to invoke Joe Traeger's identity. Joe Traeger is, indeed, the founder of the wood pellet grill. However, it does not follow that the use of the name "Founders Series" in Dansons' marketing of wood pellet grills necessarily raises Joe's name and likeness in the minds of consumers as automatically as, for example, a Bette Midler voice impersonator raises Midler's name and likeness.

In addition, Traeger Grills previously agreed that the use of the name "Founders Series" did not violate Joe Traeger's right of publicity (Doc. 65-2 at 5); it appears disingenuous for it to argue to the contrary, now. Accordingly, it is unlikely that Traeger Grills will prevail on its right of publicity claim.

**2. False Endorsement Claim**

Traeger Grills asserts a false endorsement claim for the first time in its second motion for preliminary injunction. (Doc. 58.) Traeger Grills does not plead a claim for false endorsement as one of the thirteen counts in its complaint and has not sought to amend its complaint to add a false endorsement claim. (Doc. 1.) This alone is a sufficient basis for concluding that Traeger Grills is unlikely to succeed. Nonetheless, the Court will evaluate the merits of this unpled claim so as to avoid a potential third round of preliminary injunction briefing.

In order to establish a claim for false endorsement under Section 43(a) of the Lanham Act, Traeger Grills must demonstrate that Dansons usage of the "Founders Series" name in marketing its products implicates Joe Traeger's persona in a manner likely to confuse consumers into thinking that he endorsed, sponsored, or was otherwise associated with Dansons' products. *Wendt v. Host Int'l, Inc.*, 125 F. 3d 806, 812 (9th Cir. 1997);

*Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1149 (9th Cir. 2002) (citation omitted) ("Under the law of false endorsement, likelihood of consumer confusion is the determinative issue."). The Ninth Circuit assesses this likelihood of confusion by weighing the eight *Downing* factors: (1) the level of recognition that the plaintiff has among the segment of society for whom the defendant's product is intended; (2) the relatedness of the fame or success of the plaintiff to the defendant's product; (3) the similarity of the likeness used by the defendant to the actual plaintiff; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) defendant's intent on selecting the plaintiff; and (8) likelihood of expansion of the product lines. *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1007-08 (9th Cir. 2001). "Although these are all factors that are appropriate for consideration in determining the likelihood of confusion, they are not necessarily of equal importance, nor do they necessarily apply to every case." *Id.* at 1008. A weighing of these factors leads the Court to conclude that it is unlikely that, when confronted with a Dansons advertisement for the Founders Series, a consumer would be confused into thinking that Joe Traeger endorsed, sponsored, or was affiliated with Dansons' products.

The second, fifth, and seventh factors weigh in favor of a finding of likely confusion. Turning to the second factor, Joe Traeger's celebrity is wholly related to his success in the wood pellet grill industry, within which Dansons markets its products. On the fifth factor, the parties share identical marketing channels in which their goods are "sold to the same class of purchasers [and] in some of the same stores[.]" *VIP Products, LLC v. Jack Daniel's Props., Inc.*, 291 F. Supp. 3d 891, 910 (D. Ariz. 2018). And, under the seventh factor, Dansons intentionally selected Joe Traeger as a face of the "Founders Series" marketing campaign. Yet, the Court's October 3, 2019 order (Doc. 53) enjoined Joe Traeger's continued affiliation with Dansons.

However, these three factors are outweighed by the first, third, fourth and sixth factors, which suggest that confusion is unlikely. The first factor strongly suggests confusion is unlikely, because Joe Traeger's celebrity is minimal—although Joe is well-

1 known within the industry itself and a small population of grill aficionados might be
2 familiar with his legacy as the founder of the wood pellet grill, there is nothing in the record
3 to indicate that the average person in the market to purchase a grill would know him from
4 Adam. Next, under the third factor, the likeness used by Dansons—"Founders Series"—
5 is not similar to Joe Traeger's likeness, similarly suggesting that confusion is unlikely. As
6 explained in the Court's right of publicity analysis, although Joe invented the wood pellet
7 grill, there is no indication that use of the term "Founders" would likely invoke Joe Traeger
8 in the minds of consumers, especially considering Joe's limited celebrity. Turning to the
9 fourth factor, Traeger Grills concedes that it has not yet discovered any evidence of actual
10 confusion resulting from Dansons' "Founders Series" brand. Although evidence of actual
11 confusion is not necessary to a finding of likelihood of confusion, *Acad. of Motion Picture*
12 *Arts and Sciences v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1456 (9th Cir. 1991),
13 Traeger Grills' inability to find any, despite undoubtedly scrutinizing Dansons' social
14 media pages in search, suggests that confusion is unlikely. Finally, factor six—the degree
15 of care likely to be exercised by the buyer—weighs against likely confusion, because
16 customers will probably exercise great care when deciding whether to purchase a Founders
17 Series grill, a luxury item costing up to $1,800. *Adidas-Am., Inc. v. Payless Shoesource,*
18 *Inc.*, 546 F. Supp. 1029, 1060 (D. Or. 2008) (explaining that customers are more likely to
19 exercise greater care with higher priced products). Accordingly, because the Court
20 concludes that confusion is unlikely, Traeger Grills is unlikely to prevail on its false
21 endorsement claim.

**B. Irreparable Harm**

23 A plaintiff seeking preliminary relief must demonstrate that irreparable injury is
24 likely in the absence of an injunction. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S.
25 7, 20 (2008). However, conclusory statements that Joe Traeger's legacy might suffer from
26 the Founders Series brand are insufficient to show that irreparable harm is likely. *Herb*
27 *Reed Enters., LLC v. Florida Enter. Mgmt.*, 736 F.3d 1239, 1249 (9th Cir. 2013).
28 Nevertheless, Traeger Grills merely argues that "Dansons' marketing of the Founders

Series imposes the exact same harms on Plaintiff [as the use of the Traeger story and the faces of Joe and Brian Traeger enjoined by the Court's prior order] because the Founders Series necessarily invokes the Traeger story and Joe Traeger." (Doc. 58 at 11.) Traeger Grills may not simply copy and paste Court's previous rationale and apply it to the vastly different circumstances at hand. The Court does not find that the marketing of the Founders Series, as it now operates, invokes the Traeger story and Joe Traeger in ways indistinguishable from or even comparable to Dansons' prior direct references to and use of images depicting the Traeger family. Indeed, even Traeger Grills, until recently, did not argue that use of the Founders Series name was improper. In fact, it did not seek to enjoin Dansons from using the Founders Series name until seven months after the March 14, 2019 announcement of the brand. *See Int'l Ass'n of Plumbing and Mech. Officials v. Int'l Conf. of Bldg. Officials*, 79 F.3d 1153 (9th Cir. 1996) ("the fact that it waited seven months before seeking injunctive relief undermines its claim of immediate threatened irreparable injury."). Consequently, Traeger Grills has failed to show that irreparable harm is likely absent an injunction.

### C. Balance of Equities

The balance of equities factor "requires the court to 'balance the competing claims of injury' and 'consider the effect on each party of the granting or withholding of the requested relief.'" *Mendoza v. Garrett*, 358 F. Supp. 3d 1145, 1181 (D. Or. 2018) (quoting *Winter*, 555 U.S. at 24.). Traeger Grills asserts that, because the Court found that the balance of equities favored entry of a preliminary injunction regarding its first preliminary injunction motion, it should similarly find here. (Doc. 58 at 11.) Again, the Court considers this second preliminary injunction on its own merits, and Traeger Grills cannot merely rely on the Court's prior findings on different issues in order to justify relief here. Traeger Grills otherwise fails to explain how the absence of this specific requested injunction would cause greater harm to it than the imposition of the injunction would cause Dansons. Rather, Traeger Grills appears to concede that the injunction would cause Dansons substantial irreparable harm, and instead notes that the Ninth Circuit has

1  nevertheless approved the entry of a preliminary injunction even where the defendant
2  presented evidence that the injunction would be fatal to its business. (Doc. 66 at 11.)
3  Conversely, Dansons asserts that an injunction would cause it "catastrophic" and
4  irreparable injury by eliminating its most high-end sub-brand and its corresponding
5  goodwill that it has invested considerable resources in developing. Dansons would also be
6  required to expend approximately $500,000 to alter the content of its advertisements,
7  packaging, and owner's manuals and reprint all catalogues and brochures. (Doc. 65 at 15.)
8  In light of the foregoing, the balance of equities tips in Dansons' favor.

### D. Public Interest

Dansons contends that denying Traeger Grills' motion is in the public interest because it encourages free competition. (Doc. 65 at 16) (citing *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 988 (9th Cir. 2000)). Traeger Grills responds that the public's interest in preventing consumer confusion outweighs its interest in free competition. (Doc. 66 at 11.) The Court must balance the public's interest on a case-by-case basis. Considering the Court's determination that consumer confusion is unlikely in the absence of a preliminary injunction, whereas a preliminary injunction would force Dansons to eliminate one of its sub-brands, thereby restricting consumer choice, the Court concludes that the public's interest in free competition outweighs its interest in preventing consumer confusion.

Based on the foregoing, Traeger Grills has not established that it is likely to succeed on the merits, is likely to suffer irreparable harm in the absence of preliminary relief, the balance of equities tips in its favor, and an injunction is in the public interest. *Winter*, 555 U.S. at 20.

//
//
//
//
//

**IT IS THEREFORE ORDERED** that Traeger Grills' second motion for preliminary injunction (Doc. 58) is **DENIED**.

Dated this 3rd day of December, 2019.

Douglas L. Rayes
United States District Judge